FRENCH v DEPARTMENT OF SOCIAL SERVICES

Docket No. 78-5301. Submitted June 12, 1979, at Lansing.—Decided October 1, 1979.

Plaintiff, Lucille French, applied for supplemental security income (SSI) benefits from the Social Security Administration. Pending a determination on the application for SSI benefits, plaintiff received temporary relief funds through the Clare County office of the Michigan Department of Social Services. As a condition for receiving the temporary relief funds, plaintiff was required to sign a reimbursement authorization agreement. Under this agreement, the plaintiff agreed to reimburse the Department of Social Services for the temporary relief funds after she received the applied-for SSI benefits. The agreement did not require the plaintiff to transfer or assign her SSI check to the Department of Social Services.

The plaintiff for several months received periodic payments of temporary relief from the Social Services office in Clare County. Upon receipt of a lump sum SSI benefit check, plaintiff took the check to the Social Services agent. $9.22 was returned to the plaintiff for the difference between the amount of the SSI benefit check and the amount advanced by the Department of Social Services.

The plaintiff later decided that the Department of Social Services had improperly accepted the SSI benefit check and requested a refund of the amount which she had reimbursed the department. The refund was refused and a general assistance hearing was held before an administrative law judge.

· At the hearing, the Department of Social Services was ordered to return the entire amount of the reimbursement to the Social Security Administration in order to allow that agency to determine whether, and in what amount, it should be repaid to the claimant or to the Department of Social Services or Clare County.

The plaintiff then appealed the ruling of the administrative law judge to the Clare Circuit Court. Paul F. O'Connell, J.,

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 70 Am Jur 2d, Social Security and Medicare § 30.

affirmed the administrative law judge's ruling on the basis that it was "not unfair to either party". The plaintiff appeals. The issue raised on appeal is whether the Department of Social Services' procedure of having a welfare claimant agree to reimburse the state, after she receives her first SSI benefit check, for advance temporary relief, as a condition of eligibility for such relief, violates a provision of the Social Security Act which states in part that a recipient's right to future payment shall not be transferrable or assignable or subject to legal process. *Held:*

The agreement between the Department of Social Services and the plaintiff, as written, was not in violation of the applicable provision of the Social Security Act. The agreement did not require the plaintiff to transfer or assign her SSI check to the department. Rather, the agreement simply required the plaintiff to repay the department in "consideration of the prompt payment of state interim assistance" once she received the SSI check. The agreement tied the reimbursement only to the time of the SSI payment, not to the source of the payment. It cannot be concluded that merely because the plaintiff chose to honor her commitment out of her SSI check that she improperly agreed to transfer or assign her right to future Social Security payments.

The Department of Social Services did not subject the plaintiff's SSI benefits to "legal process" in contravention of the Social Security Act. The plaintiff was obligated to repay the debt and the failure of the department to inform the plaintiff that she could resist the collection of the debt by use of legal process from one specific source—the SSI benefits—does not render the payment involuntary.

The order of the administrative law judge is vacated. The department may keep the funds paid to it by the plaintiff out of her SSI lump sum benefit check.

1. SOCIAL SECURITY AND PUBLIC WELFARE — BENEFITS — RECIPIENT'S RIGHTS — FUTURE PAYMENTS — TRANSFERABILITY — STATUTES.

The rights of a recipient of social security benefits to future payments are neither transferrable nor assignable (42 USC 407).

2. SOCIAL SECURITY AND PUBLIC WELFARE — BENEFITS — CREDITORS' RIGHTS — STATUTES.

No creditor, including the state, may use legal process to reach social security benefits; creditors cannot complain of the recipient's use, misuse or nonuse of the moneys (42 USC 407).

3. SOCIAL SECURITY AND PUBLIC WELFARE — SSI BENEFITS — TRANS-
   FER OF BENEFITS — ASSIGNING BENEFITS — LEGAL PROCESS —
   STATUTES.

> An agreement signed by a state welfare recipient which requires
> the recipient to reimburse the state agency after she receives
> applied-for supplemental security income (SSI) benefits from
> the Federal government is a valid agreement to repay a debt to
> the state where the terms of the agreement neither require the
> recipient to transfer or assign the SSI benefits to the state
> agency, but only establish receipt of the SSI benefits as a
> condition precedent to the obligation to repay, nor subject the
> recipient's SSI benefits to "legal process"; the mere fact that
> the recipient chooses to honor the obligation by turning over
> her SSI check does not invalidate the agreement as an agree-
> ment to assign or transfer SSI benefits (42 USC 407).

Legal Services of Eastern Michigan (by *Ronald
B. Eskin),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Janis Meija,
Mark S. Meadows* and *William K. Basinger,* Assist-
ants Attorney General, for defendant.

Before: ALLEN, P.J., and T. M. BURNS and D. E.
HOLBROOK,* JJ.

ALLEN, P.J. This appeal is taken as of right by
plaintiff-appellant, Lucille M. French, from a judg-
ment and order entered by the circuit court affirm-
ing the decision of the administrative law judge
who ruled that the defendant-appellee, Depart-
ment of Social Services, was required to return
$759.18 to the Social Security Administration of
the United States Government, which money the
defendant received from the plaintiff pursuant to a
"reimbursement authorization agreement".

On December 17, 1976, plaintiff signed an agree-

---

* Former Court of Appeals Judge, sitting on the Court of Appeals
by assignment pursuant to Const 1963, art 6, § 23 as amended in
1968.

ment with the Michigan Department of Social Services in Clare County to reimburse the state for general assistance funds to be paid to plaintiff as temporary relief pending her application for supplemental security income (SSI) benefits under Subchapter XVI of the Social Security Act.[1] The text of the agreement, entitled "Reimbursement Authorization" and completed in accordance with the defendant department's guidelines, states:

"FOR AND IN CONSIDERATION of the prompt payment of State interim assistance, (assistance furnished to or on behalf of applicants for Supplemental Security Income financed from State or local funds for basic needs during the period in which applications are pending) I hereby authorize the Secretary of Health, Education, and Welfare to make the first payment of Supplemental Security Income benefits for which I am determined to be eligible to receive, for and on my behalf, to the County of Clare, State of Michigan.

"I further authorize the county to deduct from such first payment an amount sufficient as reimbursement for interim assistance paid to me; and after making such deduction, the County shall promptly pay the balance, if any, to me.

"If I receive directly the first payment of Supplemental Security Income benefits for which I am determined eligible, I agree to promptly reimburse the County of Clare, State of Michigan for any duplicated interim assistance advanced while the application for Supplemental Security Income was pending.

"It is understood that in the event of disagreement, I shall have the right to a hearing from the county with respect to such apportionment of such first payment."

The defendant did not send a copy of this reimbursement authorization agreement to the Secre-

---

[1] Pub L 92-603 § 301, effective January 1, 1974; 42 USC 1381, *et seq.*

tary of Health, Education and Welfare pursuant to 42 USC 1383(g)(1).[2]

Thereafter, commencing January 4, 1977, until sometime in March, 1977, plaintiff received periodic payments of temporary relief from the defendant totalling $759.18. On April 4, 1977, plaintiff received an SSI lump sum benefit check in the amount of $768.22. She brought the check into the local office of the department and indorsed it over to the defendant's agent, of which $9.22 was returned to the plaintiff. Plaintiff testified that she repaid the advanced payments out of her SSI check "because I was obligated to do it. Because that was their request."

Plaintiff apparently decided that defendant improperly accepted the SSI benefit check and requested a refund of the portion of the lump sum payment which was kept by the defendant. A general assistance hearing was held before an administrative law judge after defendant refused to refund the money claimed by the plaintiff.

At the hearing it was determined that according to Department of Social Services' policy, when a client has a pending SSI claim with the Federal government, the defendant furnishes interim assistance payments while the client is waiting for a decision on the claim. At the same time, the client signs a repayment agreement, promising to repay the local county when the first SSI lump sum check is received by the client.

---

[2] As a result of the defendant's failure to communicate with the Secretary of HEW regarding the plaintiff's execution of the reimbursement agreement it was precluded from recouping, directly from the Secretary, the money subsequently advanced to the plaintiff as interim assistance, pursuant to 42 USC 1381(g)(1). Therefore, under the circumstances presented, we conclude that the first two paragraphs of the reimbursement agreement provide no basis upon which defendant can rightfully claim direct recoupment from the Federal government of moneys advanced by defendant to plaintiff.

At the conclusion of the hearing, the defendant was ordered to return the entire amount of the reimbursement to the Social Security Administration in order to allow that agency to determine whether, and in what amount, it should be repaid to the claimant or to the defendant, or Clare County. The circuit court affirmed this decision on the basis that it was "not unfair to either party". We affirm in part and reverse in part.

The issue presented is one of first impression in this state. It raises the question of whether the defendant's procedure of having a welfare claimant agree to reimburse the state, when she receives her first SSI benefit check, for advance temporary relief, as a condition of eligibility for such relief, violates 42 USC 407. That section states:

"The right of any person to any future payment under this subchapter shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process." 42 USC 407.

This provision was made applicable to SSI benefits. 42 USC 1383(d)(1).

On its face, the all-inclusive § 407 appears to bar defendant from reaching plaintiff's SSI lump sum benefit check. The first clause of § 407 is a limitation on the power of the recipient: his right to any future payment "shall not be transferrable or assignable". *In re Vary Estate,* 401 Mich 340, 355; 258 NW2d 11 (1977) (LEVIN, J., dissenting). With the exception of a particular statutory modification inapplicable in the instant case,[3] it is clear

---

[3] See footnote 2.

that the plaintiff is prohibited from agreeing to transfer or assign her SSI lump sum benefit check to any creditor, including the defendant Department of Social Services. *Philpott v Essex County Welfare Board,* 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973). The second clause of § 407 is a limitation on the remedies available to a creditor of the plaintiff to proceed against the money paid to a recipient of social security benefits: defendant cannot reach plaintiff's SSI lump sum benefit check by subjecting it to "execution, levy, attachment, garnishment, or other legal process". We have carefully reviewed the "reimbursement agreement" and the applicable law and conclude that under the circumstances presented there was nothing impermissible about either the execution or the fulfillment of the reimbursement agreement between the plaintiff and defendant.

In general, plaintiff claims that her SSI benefits were improperly subject to "legal process" by the Department of Social Services because it conditioned payment of plaintiff's interim benefits on her acceptance of the reimbursement agreement. In particular, plaintiff contends that the agreement is not legally enforceable, and the requirement that she sign it as a condition for receiving interim benefits misleads recipients into believing that they have a legal obligation to turn over their SSI lump sum benefit check to the defendant. Plaintiff bases her argument on two Pennsylvania decisions which held under facts similar to those in the case at bar that the failure of the state welfare department to inform the recipients of their right under *Philpott* to avoid using their social security benefit to repay the state "while not achieved through 'legal process', was certainly involuntary and not obtained through 'fair means' ". *Wohlgemuth v Armacost,* 18 Pa Commw

394, 400; 336 A2d 455 (1975), *St Clair v Commonwealth,* 29 Pa Commw 150, 152-153; 370 A2d 751 (1977).

Defendant responds by claiming that its actions were not coercive and that the mere nondisclosure of the plaintiff's *Philpott* rights is not equivalent to the state's use of "legal process" to reach the plaintiff's social security benefits. Moreover, defendant correctly observes that the cases relied on by plaintiff in support of her position on appeal have recently been overruled by the Pennsylvania Supreme Court in *Tunnicliff v Commonwealth, Dep't of Public Welfare,* 483 Pa 275; 396 A2d 1168 (1978).

The third paragraph of the reimbursement authorization agreement is the critical passage. It states:

"If I receive directly the first payment of Supplemental Security Income benefits for which I am determined eligible, I agree to promptly reimburse the County of Clare, State of Michigan for any duplicated interim assistance advanced while the application for Supplemental Security Income was pending."

It is to be noted that this provision does not require the plaintiff to transfer or assign her SSI check to the defendant. Rather, the agreement, simply stated, requires the plaintiff to repay the defendant in "consideration of the prompt payment of state interim assistance" once she receives her SSI check. The plaintiff's receipt of the check from the Federal government is a condition precedent to her obligation to repay the defendant's cash advances. If she never receives the SSI check, or is deemed to be disqualified from receiving such benefits, the plaintiff would have no duty to repay the defendant. MCL 400.77; MSA 16.477. The requirement that the reimbursement be tied to the

plaintiff's receipt of her SSI benefit check refers only to the *time* of repayment, not the *source* of the payment. *Tunnicliff v Commonwealth, supra,* 396 A2d at 1171, fn 5. Plaintiff's commitment to repay Clare County became binding upon her receipt of her first SSI check. The reimbursement agreement does not state where plaintiff is to obtain the money to meet this commitment. Therefore, we conclude that the reimbursement agreement was not an impermissible agreement under 42 USC 407, to transfer or assign any future payment of social security benefits. We might have reached the opposite result if the agreement had specifically required plaintiff to turn over her SSI check to defendant in fulfillment of her repayment obligation. However, where as here, plaintiff executed a commitment to repay the interim benefits in accordance with her statutory obligation (MCL 400.77; MSA 16.477) and agreed *when* she was to repay it, it should not be concluded that merely because she chose to honor her commitment out of her SSI check that she improperly agreed to transfer or assign her right to future social security payments.

Likewise, we conclude that the defendant did not subject plaintiff's SSI benefits to "legal process" in contravention of § 407. There is nothing in the record which suggests that the plaintiff was intimidated, coerced, or pressured into indorsing her check over to the defendant. And while it can be assumed that the plaintiff may have felt somewhat powerless to "buck the system", it does not follow that the defendant's behavior constituted subjecting the plaintiff's benefits to "legal process".

First, it must be noted that the holding in *Philpott v Essex County Welfare Board, supra,* is inapposite in the instant case. In *Philpott,* the

Supreme Court noted that the mere filing of the reimbursement agreement had the same effect as entry of a formal judgment under New Jersey law at that time, and that the defendant State Department of Public Welfare had begun legal proceedings to attach the plaintiff's bank account in which the plaintiff's social security benefits had been deposited. No such formal or quasi-formal legal action was ever initiated by the defendant in the instant case. Moreover, the doctrine of *ejusdem generis* used in the construction of statutes suggests that the use of the general phrase "other legal process" following an enumeration of specific things *(e.g.,* "execution, levy, attachment, garnishment")* is to be held to refer to things of the same general character as those specified. *People v Powell,* 280 Mich 699, 704; 274 NW 372 (1937). Whatever oppressive or intimidating effect the involvement of the "state" may have had in the plaintiff's decision to use her SSI check to repay her debts, it cannot be construed as constituting "legal process" within the meaning of 42 USC 407.

Second, as noted above, the reimbursement agreement did not involve either an assignment or transfer of future rights by the plaintiff. Rather, the plaintiff agreed, as required by state law (MCL 400.77; MSA 16.477), to repay her "debt" to the state from whatever source, once she had received her first SSI check. The fact that defendant tied the timing of repayment to plaintiff's receipt of her first SSI check illustrates its recognition of the practicalities of recouping the advanced interim benefits while at the same time fulfilling the purposes of the Social Security Act.[4] Therefore, we

[4] The underlying principle of the social security system is to protect the beneficiaries from the hardships of existence, *United States v Silk,* 331 US 704, 711; 67 S Ct 1463; 91 L Ed 1757 (1947), *In re Vary Estate, supra,* at 344-346. At the same time, the purpose of § 407 of the Social

conclude that the defendant did not act improperly in requiring plaintiff to sign the reimbursement agreement and then accepting repayment for her legal obligation out of her first SSI benefit check. Hence, we adopt the reasoning recently used by the Supreme Court of Pennsylvania to uphold a similar reimbursement arrangement. *Tunnicliff v Commonwealth, Dep't of Public Welfare,* 483 Pa 275; 396 A2d 1168 (1978).

In *Tunnicliff* the Pennsylvania Supreme Court was faced with a similar reimbursement agreement executed between the State Department of Public Welfare (DPW) and the plaintiffs-recipients. Plaintiffs-appellants repayed out of their first SSI lump sum benefit check the amount received by them as temporary assistance, as in the case at bar. In rejecting appellants' contention that the DPW employed impermissible tactics for collecting its debt the *Tunnicliff* Court observed:

"In the instant case the payment made to DPW by appellants was voluntary even though they may have been under the impression that they were legally obligated to pay the debt. The fact is they were so obligated! The instruments signed by appellants committed them to repay the interim assistance. They did not delineate the *source* of that repayment. Had appellants received an inheritance or won the lottery, these sources could have been reached *even by legal process* to enforce the obligation imposed by the loan agreements, and *Philpott* does not suggest otherwise. The mere failure of DPW to inform appellants that they might assert their *Philpott* rights and resist the collec-

Security Act is to protect the benefits recipient and those dependent on him from claims of creditors. *Brown v Brown,* 32 Ohio App 2d 139; 288 NE2d 852 (1972). Since recipients of SSI benefits have only minimal resources, 42 USC 1382(a), and since those recipients have a legal obligation to reimburse the state for the interim payments, it follows that tying plaintiff's repayment obligation to the *time* when she receives her first SSI lump sum benefit check comports with both the spirit and letter of Federal and state mandates.

tion of the debt by use of the legal process from the one specific source—the SSI benefits—does not render the payment involuntary. We cannot accept appellants' position that DPW has an affirmative duty to inform its debtors of methods of evading their legitimate debts. To hold otherwise would provide a windfall to those eligible for federal benefits but whose federal benefits are delayed, thus encouraging 'double-dipping' at the expense of the taxpayers." (Footnotes omitted.) (Emphasis in original.) 483 Pa at 281-282; 396 A2d at 1171.

Accordingly, we vacate the order of the administrative law judge and rule that the defendant department may keep the money paid to it by plaintiff out of her SSI lump sum benefit check for subsequent repayment to the appropriate government agencies as required by law.

No costs, a public question.