[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties have been married for fifteen years. There are three minor children, all issue of the marriage; ages twelve, nine and seven. The parties have agreed, with the assistance of the Family Services Office, on a shared custody arrangement. The issues remaining between the parties are solely financial. They include the amount and term of any alimony payable by the plaintiff, Mr. Morris, to the defendant, Mrs. Morris; and financial child support. There are no financial issues related to real estate, bank accounts, stocks and bonds, deferred compensation, or retirement plans.
This matter has produced copious motions, numerous CT Page 11789 appearances by parties in court, and contempt findings against the plaintiff, all evolving from the issue of financial support to Mrs. Morris and the three children. Each proceeding has produced creative financial affidavits from the plaintiff in his legal obsession to circumvent providing the needed financial support for his family.
Mr. Morris is employed in sales management, and has been so employed in sales for approximately two decades. He has a Bachelor's degree in Finance. Prior to Mrs. Morris obtaining part time employment, Mr. Morris had been the sole financial support of his wife and children. He has been employed throughout the marriage, and has provided well for his family and has a well-developed earning capacity.
The wife has been employed for the past four years as a school bus driver. She works part time, approximately twenty hours per week, at a rate of $10.00 per hour. She supplements this part time employment by serving as a religious education instructor for one day per week. Prior to this employment, the defendant's role was that of homemaker for her husband and three minor children.
Mrs. Morris testified that a decade ago, she earned approximately $28,000/year as a scheduling office manager for a small video production company on the west coast. Then, following a move to the east coast, she held similar employment. Testimony revealed that the technology today has now surpassed the skills presently possessed by Mrs. Morris to demand that income in that position. Mrs. Morris has completed approximately two years of college.
Based on this employment history, Mr. Morris obsessively argues that Mrs. Morris' earning capacity is far greater than what she is presently earning. The court questions that claim. The time may come when Mrs. Morris may be able to substantially increase her level of earning; however, the court believes that her earning capacity is accurately reflected in her present earnings. The plaintiff's claim that the defendant earn $30,000 per year and be the primary care provider for the children, which includes attending to their unique needs, is contrary to the evidence presented at trial. In the absence of such evidence, the court cannot consider these potential earnings in establishing its financial orders. Schmidt v. Schmidt, 180 Conn. 184, 190-91
(1980) CT Page 11790
The issue at trial was clearly to determine the amount of Mr. Morris' income, so that appropriate financial orders may be entered.
"Everyone is shooting at something that is moving, which is Mr. Morris' income. A large part of that is unavoidable. Mr. Morris' income fluctuates." Superior Court-Judicial District of New Haven at New Haven, March 7, 1997, page 3.
A prior proceeding found that Mr. Morris had gross receipts of $105,000 in his 1994 tax return. On his 1995 tax return, the figure was $55,000. His recent rental application placed his income at $80,000. The plaintiff's financial affidavit at time of trial was an income of $588.30 per week.
I find that the plaintiff has a significant and substantial income at his profession, sufficient to provide financial support for his family. Further, the court finds as incredulous the testimony of the plaintiff regarding his earnings and finances.
The court heard copious testimony from both parties as to the cause of the breakdown of the marriage. Based on that testimony and the reasonable inferences to be so drawn, the cause of the marital breakdown is clearly the plaintiff's adulterous relationships with other women during the marriage. The consistent betrayal of trust by the plaintiff, along with his excessive drinking, culminating in a physical assault on the defendant in which he broke her arm requiring a brief hospitalization, and the issuance of a protective order certainly destroyed the foundation of the marital relationship. While it is a truism that both parties are responsible for any marriage's breakdown; based on the testimony at trial, the plaintiff's conduct was the primary cause.
Clearly, the children and the defendant have a continuing need for financial support from the plaintiff in spite of his persistent protestation. To describe the atmosphere between the parties at trial as acrimonious is at best an inartful description.
Mrs. Morris' devotion of her time to caring for the parties' home and children has left her with little employability and little earning capacity. In addition, her efforts at home have contributed to Mr. Morris' economic achievements by leaving him CT Page 11791 free to provide time away from home to devote to his career in sales management. "Turning Labor into Love: Housework and the Law," 91 Northwestern U.L. Rev. 1, 17-21, 57-58, 64-67 (1996) Mrs. Morris made substantial non-economic contributions throughout the marriage, see O'Neil v O'Neil, 13 Conn. App. 300,311 (1988), and economic contributions as well, since she became employed in 1994.
The result is that Mrs. Morris remains and will remain dependent upon Mr. Morris for financial support until she can develop an independent capacity.
Even after receipt of child support in the guideline amount from Mr. Morris, Mrs. Morris has a continuing need for support that the court finds Mr. Morris' present income allows him to fulfill. Comparing the parties' net weekly income from all sources, and considering Mrs. Morris' reasonable and necessary weekly expenses, as well as the tax consequences of an alimony order, the court finds that the alimony amount proposed by Mr. Morris is not a reasonable contribution toward Mrs. Morris' continuing need for support. Moreover, the court can consider the effects of a party's conduct on the other party in making its orders, Robinson v. Robinson, 187 Conn. 70, 72 (1986), and the facts of this case demand that the court do so.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "it would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account,"Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those CT Page 11792 findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses, and assessment of their credibility, the court enters the following orders:
1. The marriage of the parties is hereby dissolved, based upon the ground that the marriage is irretrievably broken down, without possibility of reconciliation.
2. As agreed between the parties at the time of trial, they shall have joint legal custody of their minor children, with the primary physical residence being with the defendant, Mrs. Morris.
3. The plaintiff shall continue to pay the defendant, by way of child support, the existing court orders until further order of the court.
4. The plaintiff shall pay the defendant $225.00 per week in alimony. The plaintiff's obligation to pay alimony shall continue until the death of the plaintiff or the defendant, or the remarriage of the defendant, but in no event shall continue beyond ten years from the date of dissolution.
5. The plaintiff shall name the defendant as primary irrevocable beneficiary of all life insurance policies in the amount of $150,000, as long as he is obligated to pay alimony or child support. The minor children shall be designated as the secondary beneficiaries until the youngest child reaches the age of 18. The plaintiff shall provide annual documentation that this insurance is in effect, and that the defendant and the minor children continue to be designated beneficiaries.
6. The plaintiff shall maintain comprehensive health insurance for the benefit of the minor children. The parties shall share equally all uninsured or otherwise unreimbursed medical expenses, except that any orthodontic expense shall be divided 75% plaintiff, and 25% defendant. The provisions of Sec.46b-84 (d) of the General Statutes are incorporated herein by reference.
7. The plaintiff shall have the tax exemptions for the two oldest children, and the defendant shall have the tax exemption for the youngest child. This provision is modifiable if there is a substantial change in the respective incomes of the parties so that the tax effects of the allocation of these exemptions are CT Page 11793 substantially changed.
8. Each party shall pay the liabilities shown on her and his respective financial affidavits submitted at trial and shall indemnify and save the other party harmless from any liability thereon, except that the plaintiff shall pay $2,500 as a contribution to the defendant's counsel fees within 180 days of the date of dissolution.
HOLDEN, J.